UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

CORTEZ BALLARD,

Defendant.
_______________________________/

Criminal Action No.
02-CR-80315-DT

Civil Action No.
03-CV-72537-DT

HON. BERNARD A. FRIEDMAN

**OPINION AND ORDER DENYING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255**

This matter is presently before the Court on Defendant's motion under 28 U.S.C. §2255 to vacate, set aside or correct the sentence. The Government has responded to Defendant's motion, and Defendant has filed a reply. Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court shall decide this motion without an evidentiary hearing.

## I. PROCEDURAL BACKGROUND

In June of 2002, Defendant was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] In August 2002, Defendant plead guilty pursuant to a Rule 11 plea agreement, which capped Defendant's custodial sentence at 71 months. Defendant's guideline range was 57 to 71 months.[2] In addition, the Government agreed

---

[1]Defendant was arrested in March 2002 for this offense.

[2]The United States Probation Department's calculations resulted in a different guideline range. In its Presentence Investigation Report, the Probation Department determined a guideline range of 70 to 87 months.

to cap the applicable fine at $75,000. Further, Defendant agreed to serve between two to three years of supervised release following his incarceration, to pay the $100 mandatory special assessment, and to waive his right to appeal. The Government also agreed to a three-point reduction in the offense level for Defendant's acceptance and responsibility, although Defendant reserved his right to request a downward departure under a mental health condition. In January 2003, the Court imposed a 70-month term of imprisonment and a two-year term of supervised release.

On March 12, 2003, Defendant filed his first Section 2255 motion to vacate his sentence. The Government responded to Defendant's motion; however, Defendant moved to withdraw his Section 2255 motion because he claimed that the prison inmate who drafted the motion failed to adequately represent the issues that Defendant wanted to raise. In July 2003, the Court dismissed Defendant's Section 2255 motion.

On June 30, 2003, Defendant filed his second Section 2255 motion to vacate his sentence. The Government again filed a response. Defendant filed a reply.

## II. DEFENDANT'S SECTION 2255 MOTION TO VACATE, SET ASIDE OR CORRECT THE SENTENCE

In his second Section 2255 motion, Defendant argues that his sentence should be vacated for several reasons. First, Defendant claims that he was not competent when he entered his guilty plea.[3] Second, Defendant claims that his counsel was ineffective because she failed to

[3]Defendant also contended that the Court erred in denying Defendant's request for a competency hearing. The Government responded that it was "unaware of any request for a [competency] hearing." (Pl.'s Resp., 5 n.1.) In his Reply, Defendant admitted that he "incorrectly stated that Ms. Brazile [Defendant's counsel] requested a competency evaluation

challenge the "knowingly" element of 18 U.S.C. § 924, which is the section that addresses the penalties for violations of 18 U.S.C. § 922.[4] Third, Defendant claims that his counsel was ineffective because she failed to pursue a defense of insanity. Lastly, Defendant claims that the Court erred in declining to grant a downward departure based on diminished capacity.

## A. DEFENDANT WAS COMPETENT TO ENTER A GUILTY PLEA

Defendant claims that he was incompetent to enter a guilty plea.

A criminal defendant must be competent in order to stand trial. Mallett v. United States, 334 F.3d 491, 494 (6th Cir. 2003). The United States Supreme Court has held that the test to determine a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam). See also Harries v. Bell, 417 F.3d 631, 636 (6th Cir. 2005) (same). This test for whether a defendant is competent to stand trial is the same test that is used to determine whether a defendant is competent to enter a guilty plea. Williams v. Bordenkircher, 696 F.2d 464, 466 (6th Cir. 1983).

Here, there has been no showing that Defendant was incompetent to stand trial. On the contrary, it appears that Defendant adequately consulted with his lawyer and understood the nature of the proceedings and factual background of the case. In a sworn declaration,

---

during the [plea hearing] conducted on August 21, 2002." (Def.'s Reply, ¶ 20.)

[4]Although Defendant is charged with violating 18 U.S.C. § 922(g)(1), Section 924 governs the applicable penalties for violations of Section 922(g)(1). Section 924 states: "Whoever *knowingly* violates subsection . . . (g) . . . of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both." 18 U.S.C. § 924(a)(2) (emphasis added).

Defendant's lawyer stated that Defendant "appeared able to understand the proceedings against him and was able to rationally assist [her] in his defense." (Pl.'s Resp., Ex. C, ¶ 9.) Defendant, though, claims that he was incompetent to enter a guilty plea because he was found to be incompetent to stand trial when examined by a psychologist on April 15, 2002. (Def.'s Br. Supp. Mot., Ex. B.) While such a finding raises an eyebrow, the determination seems to be reconciled by another mental health evaluation conducted two months later—and the month before Defendant actually plead guilty—when the Associate Unit Director of the Center for Forensic Psychiatry determined that the Defendant's "cognition was intact and his insight and judgment appeared fair." (Pl.'s Resp., Ex. A, 2.) At that mental examination, Defendant "denied any perceptual disorder or paranoid ideation and [the doctor found] no objective evidence to the contrary." (Id.) Thus, even if Defendant had previously been deemed incompetent to stand trial, that no longer appeared to be the case when he actually, months later, entered his guilty plea.

Lastly, the Rule 11 plea colloquy between the Court and the Defendant is indicative of a defendant who consulted with his lawyer, understood the proceedings before him, and was alert. For instance, the following are excerpts from the exchange between the Court and the Defendant at the plea colloquy:

> The Court: [P]rior to signing [the plea agreement], you and your attorney have had an opportunity to go over that and can I take it since it has your signature that you understand its terms and conditions?
> The Defendant: Yes, sir.
> . . . .
> The Court: Are you pleading guilty freely and voluntarily?
> The Defendant: Yes, sir.
> The Court: Are you pleading guilty because you feel you are guilty?
> The Defendant: Yes, sir.
> . . . .

> The Court: Are you satisfied with her representation of you?
> The Defendant: Yes, sir.
> . . . .
> The Court: And you've had an opportunity to go over this guilty plea questionnaire with your lawyer; is that correct?
> The Defendant: Yes, sir.
> . . . .
> Court: And you read and write English okay?
> Defendant: Yes, sir.

(Id. at Ex. B, 5-8.) The Court was able to visibly observe the Defendant. Defendant seemed aware and cognizant of the proceedings, and he exhibited no behavior or made any statements that would have raised any suspicions that his competency was questionable. Thus, based on counsel's statements about her interactions with Defendant, the most recent psychological examination, Defendant's statements to the Court during the plea colloquy, and the Court's observation of Defendant during the proceedings, the Court finds that the Defendant has not shown evidence that he was incompetent to enter a guilty plea.

**B. NO INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S DECISION NOT TO CHALLENGE THE "KNOWINGLY" ELEMENT**

Defendant claims that his counsel was ineffective for failing to challenge the "knowingly" element of 18 U.S.C. § 924.

The Sixth Circuit has explained that "[a] defendant asserting an ineffective assistance of counsel claim generally must show not only that defense counsel's performance was deficient but also that this deficient performance prejudiced the defense." Wong v. Money, 142 F.3d 313, 319 (6th Cir. 1998). See also Strickland v. Washington, 466 U.S. 668, 687 (1984) (same). Although this is a two-prong test, a court is not required to review both prongs; but rather, a court can dispose of an unsubstantiated ineffectiveness claim based on merely one prong. Mallett, 334 F.3d at 497.

The first prong—deficient performance—"requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. The United States Supreme Court has stated that a "defendant must show that counsel's performance fell below an objective standard of reasonableness." Id. at 688. However, the Supreme Court has instructed courts to be "highly deferential" when reviewing a lawyer's performance. Id. at 689. This means that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

As for the second prong—prejudice—a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. In other words, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Thus, a defendant must satisfy both prongs of the test in order to succeed on an ineffectiveness claim.

Here, Defendant does not overcome the strong presumption in favor of effective assistance of counsel. Defendant has shown neither that counsel's performance was deficient nor that the outcome of the trial would have been different. Counsel had no reason to suspect that Defendant did not "knowingly" possess the gun. In fact, counsel states that Defendant told her "that he had originally found the gun and kept it because he wanted it for his own protection." (Pl.'s Resp., Ex. C, ¶ 5.) As explained by counsel, Defendant's statements to her "indicated that he was in knowing possession of the gun at the time of his arrest." (Id. at Ex. C, ¶ 7.)

Further, in his own motion, Defendant states that he "went to get the gun I was arrested for possessing. My only thought [in getting the gun] was that the men whom I had seen were going to kill me." (Def.'s Mot., ¶ 8.) Defendant shows no evidence that he did not *know* that he possessed a gun. Counsel's performance, in not challenging the "knowingly" element, seems to be an objectively rational, appropriate, and professional decision. Thus, Defendant fails to prove deficient performance.

In addition, Defendant has not shown that counsel's decision not to challenge the "knowingly" element affected the outcome of the case. The evidence suggests that Defendant clearly knew that he possessed a gun. Even if counsel had challenged the "knowingly" element, Defendant almost surely would have lost the challenge because the evidence heavily supports a finding that Defendant knew that he possessed the gun. Thus, Defendant fails to prove prejudice.

### C. NO INEFFECTIVE ASSISTANCE OF COUNSEL FOR COUNSEL'S DECISION NOT TO PURSUE A DEFENSE OF INSANITY

Defendant claims that his counsel was ineffective because she failed to pursue a defense of insanity.

In order to successfully assert a defense of insanity, a defendant must show that "as a result of a severe mental disease or defect, [the defendant] was unable to appreciate the nature and quality or the wrongfulness of his acts." 18 U.S.C. § 17(a) (2000). The defendant must prove his insanity by satisfying the high burden of "clear and convincing evidence." Id. § 17(b).

Here, Defendant claims that he was mentally ill at the time of the offense. (Def.'s Reply, ¶ 19.) He states that counsel never informed him that he could try to pursue an insanity defense, and that if she had informed him about this defense, he would have elected to go to trial instead

of pleading guilty. (Def.'s Mot., 5.) To support his assertion of mental illness, Defendant argues that statements from his family members and friends show that he was insane before and during the time of the offense. (Def.'s Br. Supp. Mot, 18.) For instance, Defendant claims that family members would testify that the death of his younger brother wreaked emotional havoc on him, that Defendant thought everyone wanted to harm him, that Defendant "talked" to his deceased brother, that Defendant was delusional, and that Defendant consistently yelled and wept. (Id.) Further, Defendant states that a Wayne County mental examination, conducted at the time he was arrested in March 2002, supports his assertion of mental illness at the time of his offense. That mental evaluation found Defendant to exhibit "a bipolar disorder," "paranoid persecutory delusions," and "severe mental illness." (Id. at Ex. A.)

In spite of Defendant's assertions, he has still not proven that he was *legally* insane by clear and convincing evidence. Defendant met with his counsel about five times. (Pl.'s Resp., Ex. C, ¶ 3.) In a sworn declaration, counsel stated that "[a]t no time did [she] have reason to question his competency or his legal sanity." (Id. at Ex. C, ¶ 4.) Although counsel stated that she did "not recall ever explaining to Mr. Ballard [Defendant] the elements of an insanity defense," she explained that "both his words and his conduct[] never gave [her] any reason to think he had any valid arguments that he was legally insane." (Id. at Ex. C, ¶ 8.)

Defendant, though, claims that counsel's statements contradict her earlier impressions about Defendant's mental health. In Defendant's sentencing memorandum and motion for downward departure, dated January 2003, counsel stated that Defendant "was tremendously distraught over his brother's murder and further upset and angered over his family's handling of the news to him." (Def.'s Sentencing Mem. and Mot. for Downward Departure, 3.) In that

memorandum, counsel also stated that "[i]n the nine (9) day period between his release from prison and his arrest on the instant offense, Mr. Ballard [Defendant] spiraled into mental illness." (Id.) In addition, she stated that Defendant "was unable to appreciate the wrongfulness of his act while in his delusional state." (Id. at 12.)

Even given the memorandum, Defendant still fails to prove ineffective assistance of counsel for several reasons. First, counsel's performance was not deficient. Counsel consulted with Defendant. She stated that she discussed the case with Defendant and that he was "able to communicate with [her] and understand [her] explanations and advice regarding" the case. (Pl.'s Resp., Ex. C, ¶ 4.) Defendant cannot now second-guess his decision to accept responsibility and plead guilty, thereby having made himself eligible for a more lenient sentence. It makes perfect sense that, as Defendant had already plead guilty, counsel decided to argue "diminished mental capacity" as a way to qualify for a downward departure. Her strategic decision cannot now be undone, nor can it now be used against her to try to show that she was ineffective.

Lastly, even if the Court interprets counsel's performance as deficient, Defendant still fails to prove the prejudice prong of the test for ineffective assistance of counsel. As explained in Strickland, there is no prejudice if counsel's "error had no effect on the judgment." Strickland, 466 U.S. at 691. The United States Supreme Court has held that "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Defendant would incorrectly have us believe that the prejudice prong turns not on whether the insanity defense would have been successful at trial, but rather on whether he would have plead

guilty or not. That is not the test for prejudice.

In this case, Defendant has not shown that an insanity defense would have succeeded at trial. Although Defendant may have correctly asserted that the mental examination shows that he was mentally ill, Defendant cannot then just leap from mental illness to mental insanity. While a person who is distraught and suffers from delusions may have a mental illness, that person is not necessarily legally insane. Legally, the burden for insanity is much higher. For instance, the mental examination of Defendant does not state that Defendant did not appreciate the wrongfulness of his actions. In fact, on the day of his arrest, Defendant provided a voluntary written statement to the police. (Def.'s Sentencing Mem. and Mot. for Downward Departure, 5.) In that statement, Defendant himself wrote that "its [sic] easy to do wrong yet hard to do right." (Id.) The Court was well aware of Defendant's diagnosed bipolar personality disorder, as presented in the Presentence Investigation Report. Defendant may have been suffering from a personality disorder—and perhaps understandably so, given the death of his brother—but Defendant has not shown that this mental condition amounted to insanity at the time of the offense. Thus, Defendant suffered no prejudice in counsel's professional decision not to pursue an insanity defense.

**D. NO ERROR IN COURT'S DECISION TO NOT GRANT DOWNWARD DEPARTURE**

Defendant claims that the Court erred in declining to grant a downward departure based on diminished mental capacity. In effect, Defendant is arguing that the Court mistakenly did not apply the allowance for a reduction in sentence, as provided by the sentencing guidelines. Defendant seeks relief for this alleged nonconstitutional error.

Here, Defendant's assertion is not a cognizable claim under Section 2255. The Sixth

Circuit has explained that "nonconstitutional errors ordinarily are not cognizable on collateral review. Defendants must assert their claims in the ordinary course of trial and direct appeal." Grant v. United States, 72 F.3d 503, 506 (6th Cir. 1996). Such nonconstitutional claims that are "not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process." Id. Moreover, the Sixth Circuit has expressly stated that "nonconstitutional errors, such as mistakes in the application of the sentencing guidelines, will rarely, if ever, warrant relief from the consequences of waiver." Id. In this case, there has been no denial of due process, no miscarriage of justice. The Court accepted a guilty plea after Defendant competently entered that plea during an interactive plea colloquy with the Court. Thus, when Defendant did not object or raise the issue on direct appeal, Defendant waived any right to collateral review of this nonconstitutional claim.

Furthermore, the Court appropriately used its discretion when it declined to grant a downward departure. That discretion allows the Court to consider other factors, such as Defendant's prior criminal history, in determining whether to grant a downward departure. This is exactly what the Court did. Moreover, the plea agreement itself did not contain any language suggesting a downward departure was a sure bet. In fact, the Government stated, in front of the Defendant at the plea colloquy, that it would be objecting to Defendant's motion for a downward departure. Thus, Defendant is not entitled to any collateral relief regarding the Court's decision to not grant a downward departure.

## III. CONCLUSION

For the reasons stated above, Defendant has not shown that he was incompetent when he entered his guilty plea, nor that his counsel was ineffective, nor that the Court made an errant decision in sentencing. Accordingly,

IT IS ORDERED that Defendant's motion under Section 2255 to vacate, set aside or correct the sentence is denied.

_____s/Bernard A. Friedman____________
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: January 18, 2006
Detroit, Michigan

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

**_______/s/ Patricia Foster Homnel__________________**
**Patricia Foster Hommel**
**Secretary to Chief Judge Friedman**